UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ANDRE PENDERMON ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:18-CV-495-CHB-MAS |
| ) | |
| TAMI HOUNSHELL, ) | |
|     AKA NURSE TAMMY ) | |
| ) | |
|     Defendant. ) | |
| ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned pursuant to the district court's referral under 28 U.S.C. § 636(b) to prepare proposed findings of fact and conclusions of law on any dispositive motion. [DE 15]. The remaining defendant in this case, Tami Hounshell ("Hounshell"), filed a motion for summary judgment on September 5, 2019. [DE 25]. Despite the Court's warning in its March 7, 2019 Order that "[f]ailure to respond to a motion shall be grounds for the Court to conclude that any arguments in opposition to the motion have been waived[,]" Plaintiff Andre Pendermon ("Pendermon") failed to respond to the motion for summary judgment. [DE 21 at Page ID # 79]. Pendermon's failure notwithstanding, for the reasons stated below, the Court recommends Hounshell's motion be denied.

**I.   FACTUAL BACKGROUND**

This case arises from Pendermon's claims that his Eighth Amendment rights were violated during his incarceration at Madison County Detention Center ("MCDC"). When Pendermon filed this lawsuit in August 2018, he claimed he had been experiencing blood in his stool since 2017.

Pendermon alleges Hounshell repeatedly refused to make him an appointment with a gastroenterologist, even after medical staff at MCDC recommended he be seen by a "GI specialist." [Complaint, DE 1, at Page ID # 5]. Pendermon alleges Hounshell told him it was "too much paperwork," and he needed a test Hounshell "didn't feel like scheduling." [DE 1 at Page ID # 6]. Pendermon claims he attempted to resolve the issue at MCDC by filling out medical requests, and when those were not effective, he filed a grievance. [DE 1 at Page ID # 9].

Hounshell's statement of the facts comports with Pendermon's in most respects. Hounshell attached exhibits to her motion for summary judgment that show Pendermon visited MCDC's medical office on twelve occasions. [DE 25-2]. The medical office notes and Hounshell's Affidavit reflect that MCDC medical staff responded to Pendermon's complaints of bloody stool with medication. The uncontroverted facts at the heart of this lawsuit are:

1) A medical provider at the jail referred Pendermon for a consultation with a gastroenterologist [Compl., DE 1 at Page ID # 5; Mem. Supp. Mot. Summ. J., DE 25-1 at Page ID # 92];

2) When Hounshell attempted to schedule the appointment, the gastroenterologist told her that Pendermon needed to complete medical tests prior to the appointment. [Compl., DE 1 at Page ID # 5; Mem. Supp. Mot. Summ. J., DE 25-1 at Page ID # 92].

3) Hounshell did not schedule the medical tests, and consequently, did not schedule the appointment with the gastroenterologist. [Compl., DE 1 at Page ID # 5; Mem. Supp. Mot. Summ. J., DE 25-1 at Page ID # 92].

Hounshell contends she did not schedule the tests because Deputy Jailer Johnson instructed her not to. [DE 25-1 at Page ID # 92]. Pendermon averred in his Complaint that Hounshell told

2

him that "it was to [*sic*] must paperwork to fill out, and [he] needed to have some test ran that she didn't feel like scheduling." [DE 1 at Page ID # 6].

## II. LEGAL STANDARD

Summary judgment is appropriate when citation to facts in the court record, including depositions, documents, affidavits, admissions, and other material, demonstrate there are no genuine issues of material fact. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987). The party moving for summary judgment bears the burden of informing the district court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. The non-moving party may not "rely on subjective beliefs to show a genuine dispute" nor may they "defeat summary judgment by conclusory responses." *ACLU v. Mercer County*, 240 F. Supp.2d 623, 625 (E.D. Ky. 2003). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III. ANALYSIS

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Such a claim states a cause of action under 42 U.S.C. § 1983. *Id.* "To succeed on such a claim, a plaintiff must show: 1) he had a serious medical need; and 2) a defendant was aware of that need, and acted with deliberate indifference to it." *Shough v. Management &Training Corp.*, 2018 WL 295576, at *8 (N.D. Ohio 2018).

**A.     SERIOUS MEDICAL NEED**

A "serious medical need" is an objective component to an Eighth Amendment deliberate indifference claim. "A serious medical need is one that has been diagnosed by a physician as

3

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gunther v. Castineta*, 561 Fed. App'x. 497, 499 (6th Cir. 2014) (*quoting Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Stated differently, "a medical need is serious if the average person would surely deem it to be one that required professional treatment." *Id.* at 500. Pendermon's Complaint, as well as the facts Hounshell sets forth in her Motion for Summary Judgment, provides more than sufficient uncontroverted facts for a jury to find that Pendermon's anal bleeding was an objectively "serious medical need." Hounshell states as much in her Affidavit that "The MCDC Advance Practice Registered Nurse, referred Andre Pendermon for non-emergent consultation with a gastroenterologist." [DE 25-3, Affidavit at ¶ 5]. This referral appears to satisfy the requirement that Pendermon have a medical need that "has been diagnosed by a physician as mandating treatment." *Gunther v. Castineta*, 561 Fed. App'x. 497, 499 (6th Cir. 2014). Moreover, the Court finds that an average person would deem chronic bloody stool as a medical need that required professional treatment, especially considering the specific, repeated complaints Pendermon made. Hounshell does not dispute the repetitive complaints:

- "when I poop I poop blood" on October 24, 2017. [DE 25-2 at Page ID # 202].

- "I havent [*sic*] shit in a week" on December 1, 2017. [DE 25-2 at Page ID # 190].

- "I am still having a lot of blood in my bowel movements" on March 14, 2018. [DE 25-2 at Page ID # 163].

- "my bleeding has gotten worse and it is bright with dark clots in it" on March 19, 2018. [DE 25-2 at Page ID # 167].

- "Im [*sic*] still having stomach pains. Did yall make my doctors [*sic*] appointment. The doctor here said there was nothing else he could do for me here" on March 20, 2018. [DE 25-2 at Page ID # 166].

- "Im [*sic*] still having stomach pains and also the other problems Ive [*sic*] been having" on March 28, 2018. [DE 25-2 at Page ID # 165].

4

Particularly concerning to the Court is Pendermon's complaint on March 19, 2018, that he was passing brightly colored blood and dark clots. A jury could find that passing brightly colored blood and darkly colored blood clots from the rectum or with stool is a medical need that "the average person would surely deem it to be one that required professional treatment." *Gunther v. Castineta*, 561 Fed. App'x. 497, 500 (6th Cir. 2014). Further, although it is unclear when someone on the prison medical staff referred Pendermon to a gastroenterologist, it is undisputed that medical staff did make such a referral in early 2018, and Hounshell did not make that appointment.

Hounshell implies that the cause of Pendermon's bloody stools was not "life-threatening." Consequently, Hounshell argues she could not have acted with deliberate indifference to a serious medical need. However, there is no requirement that the medical need be "life-threatening," only that it be one which an average person would recognize as requiring professional treatment or for which a physician has prescribed treatment.[1] Accordingly, Hounshell's own admissions establish a genuine material issue of fact as to whether Pendermon had a serious medical need.

## B. DELIBERATE INDIFFERENCE

In contrast to the objectivity that applies to whether an inmate had a "serious medical need," the "deliberate indifference" prong of Pendermon's claim is measured subjectively. "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (internal citations and quotation marks omitted). Hounshell argues that Pendermon has not provided sufficient evidence of deliberate indifference

---

[1] Further, to the extent Hounshell would like the Court or a jury to consider medical evidence, Hounshell must introduce that evidence through an expert. She cannot rely on bald assertions in her memorandum that "[b]lood in the stool is not necessarily an indicator of a substantial risk of harm" because "most causes of bloody stool are non-life-threatening and include hemorrhoids, anal fissures and straining due to hard stool." [DE 25-1 at Page ID # 97-98].

5

to withstand her motion for summary judgment because "[t]he only evidence is that Nurse Hounshell responded promptly to Pendermon's requests and attempted to schedule a gastroenterology appointment." [DE 25-1 at Page ID # 94].

This argument mischaracterizes the facts even as Hounshell claims them to be. Hounshell and Pendermon agree that Pendermon was referred to a gastroenterologist and that Hounshell never made the appointment. The only difference in Pendermon and Hounshell's versions of events are their explanations as to **why** Hounshell never scheduled the appointment. Pendermon averred in his Complaint that Hounshell told him it was "to [*sic*] much paperwork to fill out" and "she didn't feel like scheduling" the tests he needed to have prior to the gastroenterologist visit. Hounshell states she did not schedule the appointment because the gastroenterologist requested medical tests as a perquisite to the office visit and "Deputy Johnson" instructed her not to schedule those tests.[2] [DE 25-1 at Page ID # 92].

Hounshell cites several cases arguing, essentially, that other prisoners have been treated worse and courts have held that that these actions did not rise to the level of "deliberate indifference." Each of these cases can be distinguished from the case at bar. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Court of Appeals substituted its own medical judgment for that of the prison medical staff when it ruled that certain diagnostic tests should have been performed and the failure to do so was a violation of the Eighth Amendment. Once again, in this case, the Court need not interject its own (unqualified) medical judgment because the prison medical staff had already determined that Pendermon needed to be seen by a gastroenterologist. The Sixth Circuit ruled that summary judgment was appropriate where the plaintiff claimed a

---

[2] "Deputy Johnson" is not a party to this lawsuit. Neither party has explained who Deputy Johnson is or what role he may have played in medical care at MCDC other than the statement that he told Hounshell not to schedule the required tests.

deliberate indifference from delayed medical treatment in *Napier v. Madison Cty., Ky.*, 238 F.3d 739 (6th Cir. 2001), because Napier's treating physician testified he did not suffer any ill effects from missing one dialysis treatment due to incarceration. The Court held that Napier had "not offered any medical evidence to show he suffered a detrimental effect from being kept from his scheduled dialysis" where he had missed forty such treatments during the same year while he was not incarcerated. *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). In this case, Pendermon does not claim delayed treatment, but that Hounshell completely refused treatment.

Hounshell argues that *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994) supports her position because it stands for the proposition that repeated acts of negligence does not constitute deliberate indifference. While that is an accurate statement of Sixth Circuit law, it is not an accurate reflection of the facts and holding in *Brooks v. Celeste*, where the Court stated:

> If, as the district court read the report, Dr. Martinez was merely repeatedly negligent, then *Farmer* dictates that he did not act with deliberate indifference. However, if Dr. Martinez was subjectively aware of a substantial risk of serious harm, then he acted with deliberate indifference as defined in *Farmer*. [. . .] Therefore, we remand to the district court with instructions to supplement the factual findings and conclusions of law in order to clarify whether deliberate indifference was proven.

*Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994). Finally, Hounshell cites *Whitley v. Albers*, 475 U.S. 312 (1986), in which an unarmed prisoner was shot in the leg during a prison riot. The Supreme Court specifically differentiated the standard of deliberate indifference in handling a prison disturbance from Eighth Amendment claims arising from the medical needs of prisoners:

> The general requirement that an Eighth Amendment claimant allege and prove the unnecessary and wanton infliction of pain should also be applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged. The deliberate indifference standard articulated in *Estelle* was appropriate in the context presented in that case because the State's responsibility to attend to the medical needs of prisoners does not ordinarily clash with other equally important governmental responsibilities. Consequently, "deliberate indifference to a prisoner's serious illness or injury," *Estelle*, *supra*, at 105, 97 S.Ct.,

7

at 291, can typically be established or disproved without the necessity of balancing competing institutional concerns for the safety of prison staff or other inmates.

*Whitley v. Albers*, 475 U.S. 312, 320 (1986).  In *Whitley*, the Court found there was not an Eighth Amendment violation considering the facts of the prison riot and the competing needs of the prison to maintain the safety of its staff and the other inmates.  The undersigned does not find *Whitley* instructive for this case, as there was no "competing institutional concern" that prevented Hounshell from assuring Pendermon would see a gastroenterologist.  *Id*.  The cases Hounshell cites do not persuade the Court that there is not a genuine issue of material fact regarding whether she acted with deliberate indifference to a serious medical need.

Pendermon did not respond to Hounshell's motion for summary judgment.  Although such a failure to respond may be reason alone to grant the moving party's motion, the Court finds that would be unjust in this scenario.  *See Broskey v. Gidley*, 2018 WL 3979017, at *3 (E.D. Mich. July 30, 2018) ("plaintiff has effectively abandoned his case against [defendant] by failing to file a response to the motion for summary judgment as ordered . . . ."); *accord Padgett v. Big Sandy Reg'l. Det. Center*, -- F.3d --, 2019 WL 6729320, at *4 (E.D. Ky. Dec. 11, 2019) ("Plaintiff's broad admissions completely undermine his civil rights claims, and he has not responded to the motion for summary judgment.").  For Hounshell to succeed on her motion, she must make a showing "to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  While highly unusual in an uncontested motion for summary judgment, it appears Hounshell has failed to make such a showing here.

Hounshell argues that

> [a]lthough the Sixth Circuit has held that "deliberate indifference may be established by showing of grossly inadequate care as well as [by] a decision to take an easier but less efficacious course of treatment," where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate*

8

> *of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). While Plaintiff may complain that he did not receive the treatment he desired, he cannot complain that his requests were ignored.

[DE 25-1, at Page ID # 98-99 (internal citation omitted)]. Unfortunately, this argument does not comport with Hounshell's own statement of the facts: Pendermon's requests to see a gastroenterologist as ordered by the prison medical staff—requests he made or followed-up on on March 14, March 16, March 20, April 2, and April 5, 2018—were wholly and plainly ignored. This is not a lawsuit about whether Pendermon received medical attention that was not to his liking. Rather, this lawsuit is about Hounshell's own admissions that a medical provider at MCDC referred Pendermon to a gastroenterologist to which her response was to do nothing. Her refusal to take action, by Hounshell's own admission, meant Pendermon did not receive the medically-prescribed treatment from that specialist. Hounshell would like to pass the buck to the elusive "Deputy Johnson" for his refusal to allow her to schedule the necessary tests. This ping-pong blame game would allow every § 1983 defendant to avoid liability in similar situations. "Deputy Johnson" could claim that Nurse Hounshell did not schedule the appointment and Nurse Hounshell could claim Deputy Johnson would not allow the tests that were a perquisite to the appointment. The Court cannot recommend such a result where, as here, there is absolutely no dispute that the named defendant did not schedule the specialist appointment that a medical professional at the prison deemed necessary for Pendermon.

The Court finds that Hounshell's admitted failure to make a gastroenterologist appointment for Pendermon presents a genuine issue of material fact as to whether Hounshell acted with deliberate indifference to Pendermon's serious medical need.

## IV.   CONCLUSION

For the reasons stated herein, the Court RECOMMENDS that Hounshell's Motion for Summary Judgment [DE 25] be DENIED. Pursuant to FED. R. CIV. P. 72 and 28 U.S.C. § 363(b)

and (c), the parties shall file objections to this Report and Recommendation within fourteen days from the date of entry of the same.

     This 18th day of February, 2020.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge

10