UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| ANDRE S. PENDERMON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:18-CV-495-CHB-MAS |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| TAMI HOUNSHELL, a/k/a NURSE TAMMY, | ) **ORDER** |
| | ) |
| | ) |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Andre S. Pendermon is a prisoner who was recently incarcerated at the Madison County Detention Center in Richmond, Kentucky. Proceeding without a lawyer, Pendermon filed a civil rights complaint with this Court pursuant to 42 U.S.C. § 1983. [R. 1] In that complaint, Pendermon alleged that multiple employees at the detention center displayed a deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment to the United States Constitution. [*Id.*]

This Court conducted an initial screening of Pendermon's complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed his claims against most of the named defendants. [R. 5] That said, the Court allowed Pendermon to proceed on his deliberate indifference claim against one of the defendants, Nurse Tami Hounshell. [*Id.*] While Hounshell then moved to dismiss Pendermon's claims against her [R. 10], the Court denied that motion and referred this case to a Magistrate Judge for further proceedings [R. 15].

The case proceeded through a streamlined discovery process, and, at the close of discovery, Hounshell filed a Motion for Summary Judgment ("Motion"). [R. 25] Pendermon did not respond to that Motion. Nevertheless, the Magistrate Judge recommended that the Court

deny Hounshell's Motion. [R. 28]  The Magistrate Judge discussed the factual background and pertinent legal standard and determined that there was a genuine issue of material fact as to both elements of Pendermon's deliberate indifference claim—that he suffered from a sufficiently serious medical need and that Hounshell displayed a deliberate indifference to that need. [*Id.*]  The Magistrate Judge also considered and distinguished the cases Hounshell cited before recommending that the Court deny her Motion. [*Id.*]

Hounshell then filed objections to the Magistrate Judge's Report and Recommendation. [R. 29]  At bottom, Hounshell reaffirmed her position that Pendermon had not put forth sufficient evidence to establish either that he suffered from a sufficiently serious medical need or that she displayed the culpable mental state required to make out an Eighth Amendment violation.  Hounshell argued that Pendermon was instead trying to constitutionalize a tort claim, which runs afoul of relevant authority, including case law already cited in her Motion for Summary Judgment. [*Id.*]  Pendermon, on the other hand, filed his own short submission in support of the Magistrate Judge's recommendation. [R. 30]

The Court has fully reviewed the record in this case, including but not limited to Pendermon's complaint, Hounshell's Motion for Summary Judgment, the evidence in the record, the Magistrate Judge's Report and Recommendation, and the parties' subsequent objections and submissions.  Ultimately, the Court agrees with the Magistrate Judge that there is a genuine issue of material fact as to both elements of Pendermon's deliberate indifference claim against Hounshell.  Therefore, the Court will deny Hounshell's Motion for Summary Judgment, as the Magistrate Judge recommended, though it will do so for the specific reasons stated in this Opinion.

I.  **Background**

Pendermon's medical history at the Madison County Detention Center in late 2017 and early 2018 is largely undisputed. The parties agree that, for several months, Pendermon repeatedly complained that he had stomach pain, suffered from constipation, and had blood in his stool. [R. 25-2 Page ID## 202–04, 190, 169] Although Pendermon received certain medications, including laxatives, stool softeners, and a prescription to treat ulcers [*id.* at Page ID## 117–18, 148, 161, 170, 211], he continued to seek medical attention [*id.* at Page ID## 190, 169]. In March 2018, Pendermon kept complaining of stomach pain and, at one point, told the medical staff he was "still having a lot of blood in [his] bowel movements." [*Id.* at Page ID## 168–69, 163] Then, on March 19, 2018, Pendermon informed the medical staff that his bleeding had gotten even worse, to the point that it was "bright red with dark clots in it." [*Id.* at Page ID# 167] Pendermon continued to complain of stomach pain for the next several weeks. [*Id.* at Page ID## 166, 165, 158]

During this same time period, Pendermon obtained his health insurance information from a family member and provided his medical insurance number and insurer's contact information to the medical staff at the detention center. [*Id.* at Page ID# 162] Pendermon also repeatedly asked to be seen by an outside doctor. In fact, the medical records that Hounshell submitted indicate that, in March 2018, Pendermon asked the medical staff if they made him an appointment with an outside doctor because "[t]he doctor here said there was nothing else he could do for me." [*Id.* at Page ID# 166] Then, in April 2018, Pendermon repeatedly asked if the staff had scheduled him to see an outside doctor. [*Id.* at Page ID## 164, 156]

At this point, the remaining facts appear to be in dispute. To be sure, the parties seem to agree that, in April 2018, Hounshell became the detention center's medical team administrator

and, thus, was responsible for scheduling outside appointments for inmates. [R. 25-3 at ¶¶ 2–3] The parties also agree that another medical provider at the detention center referred Pendermon for a consultation with a gastroenterologist. However, according to Pendermon's sworn complaint, "The doctor said I needed to see a GI specialest [sic] for life threating [sic] issues." [R. 1 Page ID# 6] Hounshell, on the other hand, claims in her affidavit that an advanced practice registered nurse, who is also the detention center's medical director, referred Pendermon for a "non-emergent consultation with a gastroenterologist." [R. 25-3 ¶ 5]

The parties also disagree about what happened next. According to Pendermon's sworn complaint, Hounshell simply refused to schedule him an appointment, even saying at one point that "it was too much paperwork to fill out" and that he "needed to have some test ran that she didn't feel like scheduling." [R. 1 Page ID## 5–6] Hounshell, however, disputes these assertions and, instead, claims in her affidavit that she collected Pendermon's insurance information and "contacted numerous gastroenterologists in the region." [R. 25-3 ¶¶ 6–8] According to Hounshell, those gastroenterologists indicated that they would not accept Pendermon's out-of-state insurance and that, in any event, Pendermon needed certain testing to be done before making an appointment. [Id. at ¶¶ 8–9] Hounshell then claims that she passed this information along to a deputy jailer, who "asked if the testing was emergent" and "was advised that it was not." [Id. at ¶¶ 10–11] Hounshell then says that the deputy jailer instructed her "not to schedule the tests." [Id. at ¶ 12] According to Hounshell, Pendermon was transferred to another detention center shortly thereafter. [R. 25-1 Page ID# 92]

A few months later, in August 2018, Pendermon filed his civil rights complaint with this Court, claiming that Hounshell displayed a deliberate indifference to his serious medical needs.

[R. 1] Hounshell is now seeking summary judgment in her favor [R. 25], but the Magistrate Judge recommends that the Court deny her Motion [R. 28].

## II. Legal Standards

As an initial matter, summary judgment is only appropriate when there is "no genuine dispute as to any material fact," and the defendant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," the Court must view all the evidence and draw all reasonable inferences in the light most favorable to Pendermon, the non-moving party. *Id.* at 251–52.

With respect to the Eighth Amendment claim at issue, in order to establish a prison official's deliberate indifference to a serious medical need, an inmate must meet two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The inmate must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a sufficiently culpable mental state, one that rises above gross negligence. *Id.* at 834–35.

## III. Analysis

Hounshell is not entitled to summary judgment because the record shows that there is a genuine issue of material fact as to both elements of Pendermon's deliberate indifference claim. Indeed, there is sufficient evidence that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment. There is also adequate evidence that Hounshell acted with a culpable enough state of mind.

### A. Objective Component

To satisfy the objective component, Pendermon must establish that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment. *Id.* at 834. The United States Court of Appeals for the Sixth Circuit has said that when an inmate has a serious medical condition and a prison official fails to provide treatment for that condition, the inmate has endured an objectively serious deprivation. *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896–99 (6th Cir. 2004). The Sixth Circuit has elaborated on this point, explaining that when a prisoner has a medical need "diagnosed by a physician as mandating treatment," he can establish the objective component by showing that the prison failed to provide treatment, *id.* at 897, or that it provided treatment "so cursory as to amount to no treatment at all." *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)).

In this case, a rational factfinder could conclude that the evidence meets this standard. That is because there is ample evidence that Pendermon had a medical need that was sufficiently serious that a healthcare provider at the prison specifically referred him to a gastroenterologist. In fact, Hounshell acknowledges this fact in her affidavit. [R. 25-3 ¶ 5] There is also sufficient evidence that Hounshell, who was in charge of scheduling outside medical appointments for inmates, failed to do so here, despite the referral from her own colleague at the detention center. [*Id.* at ¶¶ 3, 5, 11, 12]

Stepping back, the Court recognizes that, in late 2017 and early 2018, Pendermon complained of stomach pain, constipation, and blood in his stool [R. 25-2 Page ID# 202–04, 190, 169], and, in response, staff at the detention center provided him with some care, including giving him laxatives, stool softeners, and a prescription to treat ulcers [*id.* at Page ID## 117–18,

148, 161, 170, 211]. However, Pendermon is not simply alleging that this care was legally inadequate. If that was all Pendermon was alleging, then he could only prevail on his Eighth Amendment claim if he showed that this care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Pendermon would also likely need expert testimony to support his claim. *See Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017).

This, however, is not the crux of Pendermon's claim, at least as best as the Court can tell from his pro se submissions, which must be construed liberally. *See Briggs v. Westcomb*, 801 F App'x 956, 959 (6th Cir. 2020). Instead, it appears that Pendermon's claim is that his condition was ongoing and possibly even deteriorating and that, at a specific point in early 2018, a medical professional at the detention center suggested there was nothing more that the facility's staff could do for him. Thus, the medical professional referred Pendermon to an outside gastroenterologist. Evidence in the record supports this version of events. *See supra* pp. 3–4.

It is true that the parties disagree on who exactly referred Pendermon to the gastroenterologist or precisely how that person characterized the importance of the appointment. Pendermon suggests that a physician referred him to the gastroenterologist because "there was nothing else [the physician] could do for [him]" at the detention center. [R. 25-2 Page ID# 166] Hounshell, however, claims in her affidavit that an advanced practice registered nurse referred Pendermon to the gastroenterologist for a "non-emergent consultation." [R. 25-3 ¶ 5] But this is ultimately a question of fact, and, either way, the evidence indicates that a medical professional in a position of authority at the detention center specifically indicated that Pendermon should be seen by a gastroenterologist after other treatment options failed to alleviate Pendermon's

symptoms. Thus, there is enough evidence for a reasonable jury to find that, at the time of the referral, Pendermon needed outside medical treatment.

There is also sufficient evidence that Hounshell, who was in charge of making outside medical appointments for inmates, failed to schedule the gastroenterologist appointment for Pendermon, and, as a result, he did not receive relevant treatment. [*Id.* at ¶¶ 3, 5, 11, 12] There is certainly a dispute over *why* Hounshell failed to make the appointment in question. Nevertheless, the evidence remains the same: a medical professional at the detention center specifically referred Pendermon to a gastroenterologist after other treatment failed and, yet, Hounshell did not schedule the appointment. [*Id.*] In light of this evidence, a rational factfinder could conclude that Pendermon needed treatment and Hounshell failed to provide it, satisfying the objective component of an Eighth Amendment claim.[1]

### B. Subjective Component

To satisfy the subjective component, Pendermon must establish that Hounshell acted with deliberate indifference. "An official is deliberately indifferent where she (1) 'subjectively perceived facts from which to infer substantial risk to the prisoner,' (2) 'did in fact draw the inference,' and (3) 'then disregarded that risk.'" *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). The Supreme Court

---

[1] Hounshell recently supplemented her affidavit and now says that, after a deputy jailer at the detention center "denied her permission" to schedule Pendermon's appointment with the gastroenterologist, she placed Pendermon "on the call list to be seen" by the detention center's advanced practice registered nurse and "await further instructions." [R. 29-3 ¶¶ 3–5] Hounshell's supplement, however, is untimely because she only filed it with her objections to the Magistrate Judge's report and recommendation. Thus, the Court need not even consider this new evidence. *See United States v. Church*, No. 19-1528, 2020 WL 2494431, at *3 (6th Cir. Apr. 22, 2020) (recognizing that a district court has the authority to disregard evidence filed for the first time as an exhibit to objections to the magistrate judge's report and recommendation); *AES-Apex Emp'r Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019) (same). Moreover, even if the Court does consider this new evidence, a reasonable jury could still determine that Hounshell's alleged action—placing Pendermon back on the detention center's sick-call list—was "so cursory as to amount to no treatment at all." *See Dominguez*, 555 F.3d at 551 (quoting *Terrance*, 286 F.3d at 843). This is particularly true given that Pendermon was transferred to another facility shortly thereafter, as Hounshell acknowledges. [R. 29 p. 3]

has noted that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citations omitted). In this case, there is enough evidence with respect to each of the foregoing elements to preclude summary judgment.

First, there is sufficient evidence that Hounshell knew about Pendermon's situation and, therefore, was in a position to subjectively perceive facts from which to infer a substantial risk. After all, Pendermon's medical records indicate that Hounshell was involved in and/or signed off on his care multiple times from late 2017 through the early 2018. *See, e.g.*, [R. 25-2 Page ID## 203–04, 174–76, 152–56]. Hounshell also became the detention center's medical team administrator in April 2018, further suggesting that she was in a position to know about Pendermon's specific circumstances. [R. 25-3 ¶ 2] Given this evidence, a rational factfinder could conclude that Hounshell was aware of Pendermon's ongoing, and arguably deteriorating, condition.

Second, there is circumstantial evidence that Hounshell did in fact infer the risks stemming from Pendermon's situation. Again, Pendermon's medical records suggest that Hounshell was aware of his repeated complaints of pain and persistent symptoms. Hounshell's affidavit then suggests that she knew Pendermon's condition had gotten to the point that another medical professional—indeed, the detention center's medical director—decided that he should be seen by a gastroenterologist. [*Id.* at ¶ 5] Given this sequence, a rational factfinder could conclude that Hounshell must have thought it would be risky for Pendermon not to see a specialist and, instead, simply remain at the detention center.

Third, there is evidence that Hounshell disregarded the risk to Pendermon. For starters, Pendermon swears in his complaint that Hounshell simply refused to schedule him an appointment, even saying at one point that "it was too much paperwork to fill out" and that he "needed to have some test ran that she didn't feel like scheduling." [R. 1 Page ID## 5–6] While Hounshell certainly disputes these assertions, Pendermon's verified complaint, which he signed under penalty of perjury pursuant to 28 U.S.C. § 1746, does constitute evidence in opposition to her Motion for Summary Judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that since the pro se plaintiff "signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746," his complaint "carries the same weight as would an affidavit for the purposes of summary judgment"). This evidence helps create a genuine issue of material fact.

Moreover, when Hounshell's affidavit and related evidence are viewed in the light most favorable to Pendermon, a rational factfinder could conclude that she disregarded the risk to him. To be sure, Hounshell's evidence indicates that she did do *something* in response to Pendermon's referral to a specialist; indeed, she says in her affidavit that she collected Pendermon's insurance information, contacted multiple gastroenterologists, and passed along the information she received to a deputy jailer. [R. 25-3 ¶¶ 5–10] But these tasks were essentially administrative in nature, and a rational factfinder could conclude that it was patently unreasonable for Hounshell to simply follow the instructions of the deputy jailer and not schedule Pendermon for certain tests he apparently needed in order to see a gastroenterologist. *See Cairelli v. Vakilian*, 80 F. App'x 979, 984 (6th Cir. 2003) (recognizing that deliberate indifference may be found where a medical professional's response to an obvious risk to an inmate's health is "patently unreasonable"). That is especially true given that there is no indication that the deputy jailer, a non-medical employee, was aware of Pendermon's ongoing condition, and his instructions ran

counter to the medical director's own decision to refer Pendermon to a specialist. And while Hounshell may have placed Pendermon back on the detention center's sick-call list, as she claims in her supplemental affidavit, that would have only returned him to a status quo that she arguably knew was insufficient given the medical director's referral to an outside gastroenterologist. Given this evidence, a rational factfinder could conclude that Hounshell disregarded the risk to Pendermon.

In short, a rational factfinder could conclude that Hounshell knew about Pendermon's situation, inferred the risk stemming from it, and disregarded that risk. Thus, Pendermon has satisfied the subjective component of an Eighth Amendment claim.

### IV.    Conclusion

In conclusion, there is a genuine issue of material fact as to both the objective and subjective components of Pendermon's deliberate indifference claim against Hounshell. Indeed, there is sufficient evidence that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment. There is also adequate evidence that Hounshell acted with a culpable enough state of mind. Therefore, the Court will deny Hounshell's Motion for Summary Judgment, as the Magistrate Judge recommended.

Finally, the Court recognizes that Hounshell filed objections to the Magistrate Judge's Report and Recommendation. [R. 29] While the Court has fully reviewed those objections, Hounshell largely reaffirmed the arguments she put forth in her Motion for Summary Judgment, which this Court is denying for the specific reasons stated above. And while Hounshell once again cites some cases that she claims justifies summary judgment here, the Court agrees with the Magistrate Judge's analysis as to why those cases are, in fact, distinguishable. [R. 28 pp. 6– 9] For example, Hounshell relies on the Sixth Circuit's decision in *Graham ex rel. Estate of*

*Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), but that case only involved a dispute over the adequacy of the treatment a prisoner received, whereas this case is about a prisoner's failure to receive the treatment specifically called for by the detention center's own medical director. Ultimately, the Sixth Circuit has made it clear that the Eighth Amendment deliberate indifference analysis is "a particularized, fact-specific inquiry" that turns on the circumstances of each case. *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002). Here, in light of the analysis set forth above, there is a genuine issue of material fact as to both elements of Pendermon's claim against Hounshell.

Accordingly, **it is HEREBY ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation [**R. 28**] is **ADOPTED** by the Court, albeit for the specific reasons stated in this Opinion.

2. Hounshell's Objections to the Report and Recommendation [**R. 29**], which largely echo the arguments made in her Motion for Summary Judgment, are **OVERRULED**.

3. Hounshell's Motion for Summary Judgment [**R. 25**] is **DENIED**.

4. In light of this decision, the Court will issue a subsequent order regarding the next steps in the litigation.

This the 26th day of June, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY